IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

LEO MONTANO,

    Plaintiff,

v.

CITY OF ALBUQUERQUE,
LAWRENCE MONTE, and
GUSTAVO GOMEZ,

    Defendants.

Case No. 1:24-cv-00933-MIS-SCY

## ORDER GRANTING DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S NEW MEXICO CIVIL RIGHTS ACT CLAIMS

THIS MATTER is before the Court on Defendants City of Albuquerque, Lawrence Monte, and Gustavo Gomez's Motion to Dismiss Plaintiff's New Mexico Civil Rights Act Claims, filed November 4, 2024. ECF No. 7 ("Mot."). Plaintiff Leo Montano filed a Response on February 26, 2025, ECF No. 26, to which Defendants filed a Reply on March 14, 2025, ECF No. 28. Upon review of the Parties' submissions and the relevant law, the Court will GRANT the Motion.

**I.    Background**[1]

Defendant the City of Albuquerque ("City") is a "'local public body' as defined by . . . the [New Mexico Civil Rights Act]," N.M. Stat. Ann. § 41-4A-2. Compl. ¶ 2, ECF No. 1-1. At all times material to the Complaint, Defendants Lawrence Monte ("Sgt. Monte") and Gustavo Gomez ("Lt. Gomez") were law enforcement officers for the Albuquerque Police Department ("APD"), id. ¶¶ 4, 15, 17, and Plaintiff was a civilian investigator employed by the City who had been

---

[1] The Court accepts the truth of all well-pleaded factual allegations in Plaintiff's Complaint and draws all reasonable inference in Plaintiff's favor.

assigned to investigate complaints of alleged police misconduct committed by APD officers, id. ¶¶ 65, 94-95, 102-04; see also Resp. at 6, ECF No. 26.

Shortly before August 2, 2022, Plaintiff completed an investigation report regarding a police officer's alleged use of excessive force of handcuffs in order to restrain an individual ("Report"). Compl. ¶ 66, ECF No. 1-1. After the Report was approved it was submitted to the appropriate personnel for further processing. Id. ¶ 67. One of the individuals who received the Report was Sgt. Monte. Id. The Report apparently upset Sgt. Monte. See id. ¶ 68. Later the same day,

> Sgt. Monte approached Plaintiff where Plaintiff was sitting and in a harsh, pejorative, and condescending tone, Sgt. Monte asked Plaintiff, "do you even understand what resisted handcuffing is?" Sgt. Monte then ordered Plaintiff to his (Sgt. Monte's) office and he ordered Plaintiff to remain in his office while he (Sgt. Monte) left his office. Plaintiff was not told that he could leave Sgt. Monte's office and he reasonably believed that he was required to stay inside Sgt. Monte's office as he had been ordered by Sgt. Monte. Sgt. Monte then returned a few minutes later with a pair of silver handcuffs and he then ordered Plaintiff to stand up, ordered him to turn around, ordered him to place his right hand behind his back, and ordered Plaintiff to extend his left arm upward. Plaintiff was apprehensive and fearful about non-complying with Sgt. Monte's orders and he therefore complied with these orders from Sgt. Monte. At no time was Plaintiff told why he had been seized by Sgt. Monte, told to go to Sgt. Monte's office, ordered to remain in Sgt. Monte's office, and why he had been ordered to stand, turn around, put his right arm behind his back, and to extend his left arm upward. After complying with these orders by Sgt. Monte, Sgt. Monte then without explanation or warning -- and without Plaintiff's consent – then roughly, intentionally, willfully, and deliberately placed handcuffs that were excessively tight onto Plaintiff's left wrist which caused immediate pain to Plaintiff. Plaintiff told Sgt. Monte that he was in a great deal of pain and he requested that Sgt. Monte stop and that he be released. Sgt. Monte ignored Plaintiff's requests and intentionally, willfully, and deliberately, instead tightened the handcuffs on Plaintiff, causing additional and increased pain to Plaintiff. Plaintiff continued to protest and to tell Sgt. Monte that he was and [sic] in pain and he implored Sgt. Monte to stop. Sgt. Monte refused to release Plaintiff and ignored Plaintiff's entreaties, and instead intentionally, willfully, and deliberately began to further pull Plaintiff's handcuffed left arm/wrist/hand downward and across Plaintiff's body in an attempt to handcuff both of Plaintiff's hands together. These movements caused Plaintiff to experience additional pain and Plaintiff continued to protest and to tell Sgt. Monte that he was experiencing pain,

2

>and he continued to implore Sgt. Monte to stop and to release him. Plaintiff further told Sgt. Monte that he had shoulder problems which were now being reinjured and made painful and he requested Sgt. Monte stop and release him. Sgt. Monte nonetheless continued to ignore these pleas and instead intentionally, willfully, and deliberately continued to seize and to control the Plaintiff while he continued to forcefully handcuff Plaintiff's hands together. Only after several failed attempts by Sgt. Monte and several ignored entreaties to stop from the Plaintiff to Sgt. Monte did Sgt. Monte finally stop and release Plaintiff from his seizure and handcuffs.

Id. ¶ 70. Sgt. Monte later completed a use of force/misconduct report in which he categorized his actions against Plaintiff as a "handcuffing 'demonstration' or a training event in which he was providing 'feedback' and 'instruction' to allow Plaintiff to have a 'better understanding' and to 'gain[] an understanding' of resisted handcuffing." Id. ¶ 85.

The next month, Lt. Gomez advised Plaintiff that he was the subject of a complaint of misconduct and the target of an investigation into whether he properly conducted an investigation. Id. ¶¶ 96-99. That complaint was ultimately dismissed. Id. ¶¶ 100-01.

On July 26, 2024, Plaintiff initiated this lawsuit by filing a Complaint for Personal Injuries and Deprivation of Constitutional and Civil Rights in New Mexico state court. Id. at 1. Relevant here, Counts IV, V, VI, VIII, and IX (there is no Count VII) allege violations of Plaintiff's rights under the New Mexico Constitution, id. ¶¶ 138-71, and are asserted under the New Mexico Civil Rights Act ("NMCRA"), see id. ¶¶ 145, 152, 160, 166, 171.[2] Specifically, Counts IV and V allege violations of Plaintiff's right against unreasonable seizures and excessive force under Article II, Section 10 of the New Mexico Constitution, id. ¶¶ 138-52; Counts VI and VIII allege violations of Plaintiff's right to free speech under Article II, Section 17 of the New Mexico Constitution, id.

---

[2] Counts I through III allege violations of Plaintiff's rights under the United States Constitution. Id. ¶¶ 111-137. Count X alleges violations of the New Mexico Tort Claims Act. Id. ¶¶ 172-90.

3

¶¶ 153-66; and Count IX alleges a violation of Plaintiff's right to due process under Article II, Section 18 of the New Mexico Constitution, id. ¶¶ 167-171.

On September 19, 2024, Defendants removed the case to the United States District Court for the District of New Mexico, invoking the Court's federal question jurisdiction. ECF No. 1 ¶¶ 10(a), 11.

On November 4, 2024, Defendants filed the instant Motion to Dismiss Plaintiff's New Mexico Civil Rights Act Claims. ECF No. 7. Plaintiff filed a Response, ECF No. 26, to which Defendants filed a Reply, ECF No. 28.[3]

## II.     Legal Standard

Pursuant to Federal Rule of Civil Procedure 12(b)(6), a party may move for dismissal if a complaint fails "to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To survive a Rule 12(b)(6) motion, the complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). This pleading standard does not impose a probability requirement, but it demands "more than a sheer possibility that a defendant has acted unlawfully." Id. Mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action" will not suffice. Twombly, 550 U.S. at 555. Although the court must accept the truth of all properly alleged facts and draw all reasonable inferences in the plaintiff's favor, the plaintiff still "must nudge the claim across the line from conceivable or

---

[3] On January 9, 2025, the Court issued an Order granting Defendants' Motion to Dismiss after Plaintiff failed to (1) timely file a response or (2) file a Notice on the docket informing the Court that the Parties had agreed to an extension of Plaintiff's response deadline. See ECF No. 20. On January 14, 2025, Plaintiff filed an Unopposed Motion to Reconsider/Withdraw Order Granting Defendants' Motion to Dismiss Plaintiff's New Mexico Civil Rights Act Claim. ECF No. 21. The Court granted that Motion, vacated the Order granting the Motion to Dismiss, and reinstated the Motion to Dismiss. ECF No. 22.

4

speculative to plausible." Brooks v. Mentor Worldwide LLC, 985 F.3d 1272, 1281 (10th Cir. 2021).

### III. Discussion

Defendants argue that N.M. Stat. Ann. § 41-4A-3(D) "specifically prohibits Plaintiff in this matter from bringing claims against the City pursuant to the NMCRA." Mot. at 2, ECF No. 7; see also id. at 4.

Plaintiff argues that the City's interpretation of Section 41-4A-3(D) is inconsistent with New Mexico's rule of statutory construction that requires that legislative intent be given primary importance. Resp. at 11-13, ECF No. 26. In this regard, he argues that the legislature's purpose in passing the NMCRA was "to ensure that law enforcement officers who violate a citizen's rights that are established by the bill of rights of the constitution of New Mexico are held accountable for their actions." Id. at 12. Plaintiff also argues that the City's interpretation of Section 41-4A-3(D) is inconsistent with New Mexico's rule of statutory construction that dictates that all parts of a statute should be read together to produce a "harmonious whole[.]" Id. at 13 (quoting Reule Sun Corp. v. Valles, 226 P.3d 611, 621 (N.M. 2009)). In this regard, he argues that the City's interpretation

> ignores 41-4A-3(A) which states that a public body "shall not subject any resident of New Mexico or person within the state" to a deprivation of "any" of their state constitutional rights and privileges, and also ignores 41-4A-3(B) which states that "[a] person who claims to have suffered a deprivation of any rights, privileges or immunities pursuant to the bill of rights of the constitution of New Mexico due to the acts or omissions of a public body or person acting on [its] behalf . . . may maintain an action to establish liability and recover actual damages . . ." (emphasis supplied). Clearly, these sister sections of 41-3A-3(D) [sic] are absent from the City's consideration because these passages contradict the City's reading of 41-3A-3(D) [sic] as these sections unambiguously allow any person (which would include Mr. Montano) to bring an action for the deprivation of his state constitutional rights committed by a law enforcement officer.

5

Id. at 13-14. Plaintiff also argues the City's interpretation of Section 41-4A-3(D) violates Article II, Section 4 of the New Mexico Constitution—which states that "[a]ll persons are born equally free, and have certain natural, inherent and inalienable rights . . . ."—because it does not afford protection to public employees from violations of their fundamental rights arising from their employment. Id. at 15-17. Plaintiff offers an alternative interpretation which, he argues, serves the legislature's intent in adopting the NMCRA and "produces a harmonious whole among the various subsections of the NMCRA[,]" id. at 17; specifically, he argues that

> the Legislature intended for the NMCRA to be used to hold public entities liable for violations of a citizen's state constitutional rights that were committed by their law enforcement officers, but it did not intend for the NMCRA to be conflated so that it was used by government employees to assert claims for alleged violations of their employment rights.

Id. Thus, Plaintiff argues that the Court should deny Defendants' Motion or, in the alternative, certify the issue to the Supreme Court of New Mexico pursuant to N.M. Stat. Ann. § 39-7-4, "given the scarcity of law regarding the NMCRA which was only recently adopted . . . ." Id. at 18.

In their Reply, Defendants argue that Section 41-4A-3(D) is unambiguous and, by its plain language, "clearly, precisely, and definitively prohibits NMCRA claims from an individual employed by a public body for claims arising from the individual's employment." Reply at 2, ECF No. 28. They argue that statutory interpretation "begins with the statute's plain meaning, using tools such as a word's common usage, rules of grammar, and statutory context[,]" id. (first citing New Mexico v. Rael, 548 P.3d 66, 75 (N.M. 2024), and then citing Zangara v. LSF9 Master Participation Tr., 557 P.3d 111, 114 (N.M. 2024)), and courts "must follow a statute's unambiguous plain meaning unless it would 'lead to injustice, absurdity or contradiction,' at which point the court may turn to additional considerations such as the statute's purpose[,]" id. at 2-3 (quoting CCA of Tenn., LLC v. N.M. Tax'n & Revenue Dep't, 548 P.3d 11, 16 (N.M. 2024)). They argue

6

that there is no injustice, absurdity or contradiction in applying Section 41-4A-3(D)'s plain language, and therefore the Court need not engage in any further statutory interpretation. Id. at 3. In this regard, Defendants note that New Mexico has other laws employees can invoke for claims arising out of their employment. Id. Defendants argue that the plain language of Section 41-4A-3(D) reflects the NMCRA's legislative purpose that public employees should be barred from asserting claims under the NMCRA arising from their employment. Id. at 3-4. They further argue that the fact that the legislature placed the public employee exception in the same section of the NMCRA as the private right of action provision "is indicative of the legislature's intent as to whom the Section applies." Id. at 4-5. They further argue that application of Section 41-4A-3(D) is not contrary to the New Mexico Bill of Rights in this case because Plaintiff was not arrested or seized—i.e., no constitutional violation occurred; rather, Sgt. Monte was performing a "handcuffing demonstration" in the police station during Plaintiff's employment. Id. at 5; see also id. at 7 (arguing that Plaintiff's "constitutional rights were not implicated in the handcuffing demonstration, making the NMCRA inapplicable in its entirety, notwithstanding the prohibition on employees from bringing suit pursuant to its provisions"). Defendants further argue that certification to the Supreme Court of New Mexico is improper because Section 41-4A-3(D) is facially unambiguous and is not an unsettled area of law. Id. at 7.

"For claims arising after July 1, 2022, the New Mexico Civil Rights Act creates a cause of action for violations of rights, privileges or immunities secured pursuant to the bill of rights of the constitution of New Mexico." Denewiler v. Santa Fe Cnty. Adult Det. Facility, No. 22-CV-631-DHU-KRS, 2023 WL 2991068, at *3 (D.N.M. Apr. 18, 2023) (citing N.M. Stat. Ann. §§ 41-4A-3, 41-4A-12). The relevant provision states, in its entirety:

    A. A public body or person acting on behalf of, under color of or within the course and scope of the authority of a public body shall not subject or cause to be subjected any resident of New Mexico or person within the state to deprivation of any rights, privileges or immunities secured pursuant to the bill of rights of the constitution of New Mexico.

    B. A person who claims to have suffered a deprivation of any rights, privileges or immunities pursuant to the bill of rights of the constitution of New Mexico due to acts or omissions of a public body or person acting on behalf of, under color of or within the course and scope of the authority of a public body may maintain an action to establish liability and recover actual damages and equitable or injunctive relief in any New Mexico district court.

    C. Claims brought pursuant to the New Mexico Civil Rights Act shall be brought exclusively against a public body. Any public body named in an action filed pursuant to the New Mexico Civil Rights Act shall be held liable for conduct of individuals acting on behalf of, under color of or within the course and scope of the authority of the public body.

    D. <u>Individuals employed by a public body shall be prohibited from using the New Mexico Civil Rights Act to pursue a claim arising from the individual's employment by the public body.</u>

    E. The remedies provided for in the New Mexico Civil Rights Act are not exclusive and shall be in addition to any other remedies prescribed by law or available pursuant to common law.

N.M. Stat. Ann. § 41-4A-3 (emphasis added).

When construing a statute, the Court "must determine and give effect to legislative intent." CCA of Tenn., 548 P.3d at 16 (citing Baker v. Hedstrom, 309 P.3d 1047, 1050 (N.M. 2013)). "Under the rules of statutory construction, we first turn to the plain meaning of the words at issue, often using the dictionary for guidance." Id. (quoting Griego v. Oliver, 316 P.3d 865, 875 (N.M. 2013)). "When the language of a statute is clear and unambiguous, we give effect to that language and refrain from further statutory interpretation." Id. (citing New Mexico v. Barela, 478 P.3d 875, 877 (N.M. 2020)). "However, if the plain meaning of the statute is doubtful or ambiguous, or if an adherence to the literal meaning of the words would lead to injustice, absurdity or contradiction,

we will construe the statute according to its obvious spirit or reason." Id. (quoting Baker, 309 P.3d at 1050).

The Court finds that the plain meaning of Section 41-4A-3(D) is not doubtful or ambiguous. The provision clearly prohibits individuals employed by a public body "from using the New Mexico Civil Rights Act to pursue a claim arising from the individual's employment by the public body." N.M. Stat. Ann. § 41-4A-3(D). "The phrase 'arising out of' is given a broad interpretation by [New Mexico] courts and is generally understood to mean originating from, having its origin in, growing out of, or flowing from." Windham v. L.C.I.2, Inc., 268 P.3d 528, 533 (N.M. Ct. App. 2011) (quoting City of Albuquerque v. BPLW Architects & Eng'rs, Inc., 213 P.3d 1146, 1153 (N.M. Ct. App. 2009)). Other courts applying the plain meaning of the phrases "arising from" and "arising out of" interpret them broadly and find that they simply require some causal connection. See, e.g., Foster Farms, LLC v. Everest Nat'l Ins. Co., 670 F. Supp. 3d 953, 966 (N.D. Cal. 2023) ("In insurance contracts, the clause 'arising from' is 'consistently given a broad interpretation' and 'broadly excludes from coverage claims with 'a minimal causal connection or incidental relation'' to the noted actions or allegations. 'Arises from' means the claim 'originat[es] from, ha[s] its origin in, grow[s] out of, . . . flow[s] from, . . . [is] incident to, or ha[s] connection with' something else." (alterations in original) (quoting L.A. Lakers, Inc. v. Fed. Ins. Co., 869 F.3d 795, 801 (9th Cir. 2017))); Doctors Co. v. Women's Healthcare Assocs., Inc., 740 S.E.2d 523, 526 (Va. 2013) (observing that the term "arising from" in an insurance contract is broader than the term "resulting from" and "permits a less direct nexus between the professional services rendered and the damages incurred, although such nexus must still be present"); Orlak v. Loyola Univ. Health Sys., 885 N.E.2d 999, 1008 (Ill. 2007) ("'[A]rising out of patient care' simply requires a causal connection between the patient's medical care and the alleged

injury."); Utica Nat'l Ins. Co. of Tex. v. Am. Indem. Co., 141 S.W.3d 198, 203 (Tex. 2004) ("'[A]rise out of' means that there is simply a 'causal connection or relation,' which is interpreted to mean that there is but for causation, though not necessarily direct or proximate causation." (internal citation omitted)). This Court agrees and finds that the plain meaning of "arising from," as used in N.M. Stat. Ann. § 41-4A-3(D), simply requires some causal connection between a plaintiff's NMCRA claim(s) and his or her employment by the public body.

Here, viewed in the light most favorable to Plaintiff, the Complaint alleges that Defendants violated Plaintiff's rights under the New Mexico Constitution because of, and in retaliation for, reports he completed in his capacity as a civilian investigator for APD. See ECF No. 1-1 ¶¶ 65-70, 96-104, 138-71. As such, Plaintiff's NMCRA claims unequivocally arise from his employment with the City and are barred by Section 41-4A-3(D) unless such a result would lead to injustice, absurdity, or contradiction, and "it is clear that the legislature did not intend such a result." New Mexico v. Maestas, 149 P.3d 933, 939 (N.M. 2006) ("[O]ur case law demonstrates that we diverge from the plain meaning of a statute to avoid an absurd result only when it is clear that the legislature did not intend such a result.").

In this regard, Plaintiff appears to argue that it would be absurd to interpret the NMCRA to provide a private right of action to everyone except employees of a public body for claims arising from their employment by the public body. See Resp. at 14-16, ECF No. 26. However, the Court finds (1) that is not an unjust, absurd, or contradictory result, and (2) even if it was, it is clearly what the legislature intended. In drafting Section 41-4A-3, the legislature created a private right of action for persons deprived of rights under the New Mexico Constitution, N.M. Stat. Ann. § 41-4A-3(B), and in the very same section explicitly prohibited "[i]ndividuals employed by a public body . . . from using the New Mexico Civil Rights Act to pursue a claim arising from the

10

individual's employment by the public body[,]" id. § 41-4A-3(D).  The legislature's intent could not be clearer.  See Maestas, 149 P.3d at 935, 940 (applying the plain meaning rule and finding that the legislature intended to exclude judges from the application of New Mexico's Governmental Conduct Act even though the court was "not aware of the legislature's reasoning in choosing to exclude judges from the Governmental Conduct Act" and acknowledging that "[s]ome may find it difficult to see why the legislature chose to do so").

If, as Plaintiff argues, the legislature only intended to prohibit public employees from using the NMCRA to pursue violations of their employment rights, it could have used such limiting language.  See Cordova v. Cline, 489 P.3d 957, 961 (N.M. Ct. App. 2021) ("The Legislature knows how to include language in a statute if it so desires[,] and could have incorporated limiting language in Section 38-2-9.1(A)-(C), had it chosen to." (internal quotation marks and citation omitted)); Giddings v. SRT-Mountain Vista, LLC, 458 P.3d 596, 602 (N.M. Ct. App. 2019) (acknowledging that if the Legislature intended to limit the language present in a statute it would have included limiting language to that effect).  Instead, the legislature used the broad term "arising from," and there is no indication that it did not intend for Section 41-4A-3(D) to be given its plain meaning.  Cf. Allen v. Kaiser Aluminum & Chem. Corp., 585 F. Supp. 154, 157 (E.D. Mo. 1984) ("There is nothing in the agreement remotely suggesting that the broad 'arising from or in connection with' language of the indemnity provision was not intended to be given its plain meaning . . . ."); Varoz v. N.M. Bd. of Podiatry, 722 P.2d 1176, 1178 (N.M. 1986) ("We must assume that the legislature chose [its] words advisedly to express its meaning unless the contrary [intent] clearly appears." (alteration in original) (quotation marks and citation omitted)).

Applying the plain meaning rule here requires dismissal of Plaintiff's NMCRA claims. Counts IV, V, VI, VIII, and IX, are asserted under the New Mexico Civil Rights Act, Compl. ¶¶

11

145, 152, 160, 166, 171, ECF No. 1-1, and arise from Plaintiff's employment by the City as a civilian investigator, see id. ¶¶ 65-68, 70, 94-95, 102-04; Resp. at 6, ECF No. 26. Consequently, Counts IV, V, VI, VIII, and IX are barred by N.M. Stat. Ann. § 41-4A-3(D).

### IV.    Conclusion

Therefore, it is HEREBY ORDERED that Defendant's Motion to Dismiss Plaintiff's New Mexico Civil Rights Act Claims, ECF No. 7, is **GRANTED**, and Counts IV, V, VI, VIII, and IX are **DISMISSED with prejudice.**

_____
**MARGARET STRICKLAND**
UNITED STATES DISTRICT JUDGE